THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE (a pseudonym),  ) | |
| ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | |
| ) | |
| BOSTON MEDICAL CENTER, AND PAUL ) | |
| TORNETTA ) | |
| Defendants ) | |
| ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES; AND JURY DEMAND**

Plaintiff Jane Doe ("Doe") (a pseudonym), for her causes of action against defendants Boston Medical Center ("BMC") and Paul Tornetta ("Tornetta"), states as follows:

**INTRODUCTION AND SUMMARY OF THE COMPLAINT**

1. Federal and state civil rights laws prohibit racial discrimination in employment, and retaliation for complaining of race discrimination or asserting one's right to be free from race, national origin and color based discrimination.

2. Defendants BMC and Tornetta have engaged in post-employment retaliation and race, national origin and color based discrimination against Doe.

3. BMC, through Tornetta, have, from discriminatory and retaliatory motive, improperly prevented Doe from being permitted to take medical board exams for board certification as an orthopedic surgeon.

1

## JURISDICTION AND VENUE

4. This court has jurisdiction because Plaintiff's causes of action arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.*, as well as 42 U.S.C. § 1981.

5. This Court has supplemental jurisdiction over all state claims under 28 U.S.C. § 1367(a).

6. Venue is proper in the U.S. District Court for the District of Massachusetts under 28 U.S.C. § 1391(b) because the relevant employment of the plaintiff was in Massachusetts, and the Defendants do business and reside within the jurisdiction of this Court, and a substantial part of the acts and omissions giving rise to Plaintiff's claims took place within the jurisdiction of this Court.

## PARTIES

7. Plaintiff is Jane Doe, now a resident of Philadelphia, Pennsylvania.

8. Doe is a Medical Doctor, and was, at times relevant to this Complaint, employed at BMC as an orthopedic surgery resident between June 2009 and June 2014.

9. BMC is a clinical and teaching hospital and medical facility located in Boston, Massachusetts.

10. Tornetta is and at relevant times was the Program Director of the orthopedic surgery resident program at BMC and was Doe's supervisor.

11. Dr. Doe is a Black woman from Nigeria.

12. Doe attended Columbia University where she achieved a Master Degree in science.

13. Doe then attended medical school at Duke University, and obtained her Doctor of Medicine along with various honors.

14. Doe then attended Yale University and received multiple awards including Outstanding Graduate Award for Excellence in Scholarship, Leadership, Service & Advocacy, and was then inducted into the Emerging Leader's Program by The American Orthopedic Association.

15. In June 2008, Doe was accepted into BMC's Orthopedic Residency program (as one of 5 residents accepted from about 600 applicants) ("the program"), a program responsible for the five-year clinical and academic training of Orthopedic Surgery Residents.

16. Doe was the only Black female resident at BMC at the program during Tornetta's many years long tenure as the Program Director.

17. After she was accepted into the program, the Minority Recruitment Department of BMC told her that when she matched into the program, a representative of the program had reached out to them, telling them that they now had a Black resident and 'so all the outreach from that department encouraging them to diversify their residency pool were no longer necessary and should cease.'

18. Doe successfully completed years 1-3 of the program and advanced to fourth year ("PGY4").

19. Doe's accomplishments in her first year of the program at BMC included winning the First Place Award, New England Orthopedic Society during first year at BMC.

20. Doe successfully completed five years of the program, but the defendants only credited her with 4 years.

21. Doe's successful completion of 5 years of the program meets the requirements of the Accreditation Council for Graduate Medical Education ("ACGME"), a requirement for Board certification as an Orthopedic Surgeon.

22. After advancing to the PGY4 year of the program despite having successfully completed four years to that point, the defendants should have advanced Doe to the PGY 5 year but for unlawful retaliation and discrimination.

23. Therefore, although Doe successfully completed five years of the program, BMC and Tornetta gave her credit for only four years, then subsequently refused to renew her because of retaliatory and discriminatory motive.

24. Tornetta and BMC agreed that Doe had good surgical capabilities and medical knowledge.

25. Harvard University, one of the teaching affiliates of the orthopedic surgery program at BMC also gave Doe an evaluation stating she was above her peers and that she was at the level of her 4th or 5th year resident by her second year.

26. Doe was the only Black resident admitted to the program during Tornetta's 10 years at BMC and was the only resident who was not given credit for all the years spent in the program and who was not permitted to complete the program.

27. Mid way through Doe's 2013/2014 academic year, BMC's Clinical Competency Committee ("CCC"), met December 6, 2013 to conduct mid-year reviews of the residents.

28. The CCC concluded that two residents, Doe and another, a Caucasian woman, may be in need of remediation prior to advancing to their respective next year of the program.

29. The CCC did not consider the prospect of either resident not being renewed in the program.

30. As of CCC meeting on December 6, 2013, only remediation options, not non-renewal or termination, were being considered for Doe as well as for the other female, Caucasian

4

resident, who was far less skilled and qualified than Doe, and who had objectively lower orthopedic surgery in-training annual test scores than Doe.

31. The CCC recommended they both meet with Dr. Tornetta to discuss the concerns.

32. Unlike with Doe, BMC provided the comparable Caucasian resident with remediation and she was later promoted and graduated from the program without repeating a year.

33. Doe then met with Tornetta on December 20, 2013 to discuss the CCC's recommendations.

34. Tornetta told Doe that she may not be promoted to her final year in the program ("PGY5.")

35. Doe, who had experienced race, color, and National Origin based biased remarks at work at BMC and had been treated worse than her similarly situated co-residents, expressed that she was being treated differently from other residents and concluded that discrimination on the basis of race, color, national origin and gender were affecting her ability to advance in the program.

36. Doe told Tornetta of vile racial comments made by a fellow resident.

37. In response, Tornetta then told Doe that he was a "vindictive" person and that he would exact "pay back" against those who crossed him.

38. Tornetta's response included Tornetta also suggesting that Doe could return to Nigeria to be an orthopedic surgeon and to practice medicine in Nigeria.

39. Tornetta next led a full faculty meeting on January 11, 2014 in which he led the discussion.

40. Notably, Dr. Tornetta did not directly observe Doe's work that year (2013-2014).

5

41. Nevertheless, out of retaliatory motive, Tornetta made it clear in the meeting that he did not think Doe should be promoted to the PGY5 year.

42. Tornetta was the driving force behind the decision not to promote Doe.

43. The January 11, 2014 faculty meeting led by Tornetta included discussion of how the failure to promote Doe might be perceived given Doe's race, national origin and gender.

44. On January 12, 2014, Tornetta met with Doe to discuss the options the faculty had for her regarding her progression in the program.

45. Tornetta relayed three options: 1) non-renewal, 2) completing the program with no surgical certification or ability to become a surgeon, and 3) doing a mentoring year, which if successful, would then allow her to enter her fifth year.

46. In February, 2014, Doe wrote to BMC accepting the offer of remediation in the form of the mentoring "bridge" year.

47. However, *after* Doe accepted this offer, Tornetta added a material condition to the offer.

48. After Doe accepted the offer of a mentoring "Bridge' year, Tornetta, out of unlawful retaliatory motive, then required that Doe sign a Last Chance Agreement ("LCA") waiving her rights to due process under the CBA and hospital policy.

49. The prospect of the waiver, when Doe felt that she was a victim of race and national origin discrimination, coupled with the revelation to Doe of Tornetta's unlawful motives spelled out in his January 24, 2014 memorandum which left no surgical option for Doe, led Doe not to sign the LCA.

50. BMC did not renew Doe in any capacity, with or without remediation, resulting in her termination from the residency program.

51. BMC then reported the non-renewal to the Board of Registration in Medicine ("BORIM"), thereby damaging Doe's ability to be licensed as a physician in Massachusetts.

52. Doe, the sole Black resident during Tornetta's tenure as Program Director, became the first resident in BMC's orthopedic surgery residence program during Tornetta's ten year tenure not to be renewed, something they never did to any other orthopedic resident during Tornetta's tenure as Program Director.

53. A comparable White male Resident who had had to do an additional year(s) during Doe's time there, was still advanced in his PGY years and was not non-renewed or reported to BORIM; therefore, he did have suffer lasting damage to his career.

54. The comparable White male Resident was permitted by Tornetta to sit for his Boards, and in spite of needing additional time in residency he was able to pass his boards and is now Board Certified.

55. Another comparable White male Resident, who was in Doe's PGY year and had lower orthopedic surgery in-training annual test scores than Doe, was also allowed to advance without repeating a PGY year or being non-renewed.

56. Tornetta granted this second comparable White male Resident permission to sit for his Boards and even with worse scores than Doe had, he was able to pass his Boards and is now Board-certified.

57. In addition to BMC's failure to renew Doe without conditioning the renewal on a waiver of fundamental rights, BMC also retaliated against Doe after she was no longer with BMC, which retaliation has been repeated numerous times and continues to the present day.

58. Tornetta continued his retaliatory campaign to stop Doe from becoming a surgeon by filing a report with BORIM which contained misrepresentations.

59. One year after Doe's termination, in his June 2015 BORIM evaluation, Tornetta falsely claimed that Doe was the subject of discipline because in 2013 she was asked to take two courses relating to physician's interpersonal work relationships.

60. BMC's articulated reasons for non-promotion and non-renewal of Doe are pretexts for discrimination and retaliation.

61. Many of the program's evaluators thought Doe's competence and technical skills were fine and that she was respectful and responsive, and had improved significantly.

62. In September, 2014, Doe filed a charge of discrimination and retaliation with the Massachusetts Commission Against Discrimination ("MCAD") and subsequently filed suit in Superior Court against both Tornetta and BMC.

63. Since her filings, Tornetta has done everything he can to prevent Doe from becoming an orthopedic surgeon.

64. On multiple occasions since then, including up to January 2023, Tornetta has refused to sign off on Doe's application to test for the board examinations for board certification as an orthopedic surgeon.

65. As the program director, Tornetta had and has the authority to so certify that Doe is qualified to sit for the board examinations; in fact, in May 2014 Tornetta and BMC offered to certify that Doe had completed the program in good standing and had met criteria to become an orthopedic surgeon and test for the orthopedic surgery board examinations as part of settlement negotiations.

66. Tornetta's refusal to certify that Doe is qualified to sit for the board examinations is done in retaliation for Doe's asserting claims of race discrimination and retaliation, and itself on discriminatory based on race.

67. Doe has met all the ACGME requirements of successful completion of an accredited orthopedic surgery residency program and is qualified to sit for the board examinations for orthopedic surgery, but has been unable to do so due to Tornetta's refusal to provide the certification she needs, which refusal is done out of unlawful retaliatory motive.

68. Doe is also independently licensed to practice Medicine in Pennsylvania and New Jersey and has no sanctions, reports or other adverse action.

69. As a direct result of Tornetta and BMC's race based discriminatory and retaliatory refusal to certify that Doe is qualified to sit for the board examinations, Doe has been unable to become board certified in her field of orthopedic surgery, and thus has suffered tremendous economic and other damages as a result.

70. On July 22 2021, Doe filed a timely Complaint and Charge of Retaliation against BMC and Tornetta with the MCAD and the Equal Employment Opportunity Commission ("EEOC").

71. In the Complaint filed with the MCAD and EEOC, Doe alleged that BMC and Tornetta have continuously engaged in a series of acts of retaliation against her for reports and complaints of discrimination.

72. BMC and Tornetta's most recent retaliatory act in a series of acts of retaliation against her for reports and complaints of discrimination occurred on or about December 6, 2023 when Dr. Tornetta and BMC again refused to certify that Doe is qualified to sit for the board examinations and thus again unlawfully prevented Doe from taking the board examinations and becoming an orthopedic surgeon.

73. The MCAD notified BMC of Doe's complaint of discrimination, investigated the complaint, and provided BMC with an opportunity to conciliate the matter; thus, Doe satisfied all administrative agency filing perquisites to this action.

### COUNT 1 – VIOLATION OF 42 U.S.C. § 1981
### (UNLAWFUL RACIAL DISCRIMINATION)

74. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

75. Throughout the course of Plaintiff's employment and post employment period to present, the defendants treated Plaintiff differently because of her race by preventing her from pursuing board certification as an orthopedic surgeon.

76. As a further direct and proximate result of said unlawful employment practices Plaintiff suffered the indignity of discrimination and tremendous economic loss.

77. Defendant's discriminatory and unlawful employment and post employment practices identified in this complaint have been intentional, deliberate, willful, systematic, and conducted in callous disregard of the federally protected rights of Plaintiff. As a result, Plaintiff is entitled to compensatory and punitive damages, as well as injunctive relief.

### COUNT 2 – VIOLATION OF 42 U.S.C. § 1981
### (RETALIATION)

78. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

79. When Plaintiff complained about BMC and Tornetta's racially discriminatory practices, Defendants retaliated against her for her protected civil rights activity.

80. Defendants, out of retaliatory motive, have refused to certify that Doe is qualified to sit for the board examinations.

81. As a further direct and proximate result of said unlawful retaliatory employment and post employment practices, Plaintiff suffered humiliation and emotional distress and tremendous economic loss.

82. Defendant's retaliatory and unlawful employment and post employment practices identified in this complaint have been intentional, deliberate, willful, systematic, and conducted in callous disregard of the federally protected rights of Plaintiff. As a result, Plaintiff is entitled to compensatory and punitive damages, as well as injunctive relief.

### COUNT 3 – VIOLATION OF M.G.L. CHAPTER 151B, SECTION 4 (RETALIATION)

83. Plaintiff restates, realleges and incorporates by reference herein the allegations contained in the preceding paragraphs as if recited in full herein.

84. Defendants, out of retaliatory motive, have refused to certify that Doe is qualified to sit for the board examinations.

85. Defendants unlawfully retaliated against the plaintiff because of and on account of her report and complaint of race discrimination and hostile environment in violation of Massachusetts General Laws Chapter 151B, Section 4.

86. As a further direct and proximate result of said unlawful retaliatory employment and post employment practices, Plaintiff suffered humiliation and emotional distress and tremendous economic loss.

87. Defendant's retaliatory and unlawful employment and post employment practices identified in this complaint have been intentional, deliberate, willful, systematic, and conducted

in callous disregard of the federally protected rights of Plaintiff. As a result, Plaintiff is entitled to compensatory and punitive damages, as well as injunctive relief. As a further direct and proximate result of said unlawful employment practices, Plaintiff was compelled to resign her position with BMC, as any reasonable person would have, and thus suffered the loss of her job as a result of a constructive discharge.

88. Plaintiff complied with the requirement(s) of Massachusetts General Laws Chapter 151B, Section 5 when she properly and in a timely manner filed a complaint with the MCAD, said complaint alleging that BMC subjected his to unlawful retaliation.

89. More than ninety days have passed since Plaintiff filed a Complaint with the MCAD.

90. The MCAD has authorized the plaintiff to bring this private cause of action.

91. Massachusetts General Laws Chapter 151B, Section 9 authorizes Plaintiff to bring this private civil action against BMC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. General and compensatory damages for Plaintiff for the violations of her state and federal constitutional and statutory rights, and emotional distress, all according to proof.

B. Punitive damages, according to proof.

C. Preliminary and permanent injunctive relief to compel the defendants to immediately certify Doe to sit for the board examinations for board certification as an orthopedic surgeon.

D. Attorneys' fees, costs, interest, and expenses pursuant to 42 U.S.C. §1988, M.G.L. Chapter 151B and other relevant statutes.

G. And such other and further relief as the Court may deem proper.

Respectfully submitted,
For the plaintiff,


/s/     *Sol J. Cohen*
Sol J. Cohen
BBO # 630776
KERSTEIN, COREN & LICHTENSTEIN, LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
(781) 997-1600
e-mail: scohen@kcl-law.com